Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer on 19 January 1995.
3. The defendant-employer was self-insured on 19 January 1995, and Crawford and Company was the servicing agent.
4. At the time of the alleged injury giving rise to this claim, plaintiff's average weekly wage was $220.00 yielding a compensation rate of $147.67.
5. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
6. The Pre-Trial Agreement, signed by the parties in October, 1996, is admitted as Stipulated Exhibit #1.
7. Plaintiff's medical records from Highsmith Rainey Hospital are admitted as Stipulated Exhibit #2.
8. Plaintiff's medical records from Cape Fear Valley Memorial Hospital are admitted as Stipulated Exhibit #3.
9. Plaintiff's medical records from Dr. J. Nicholas Fax of the Coastal Plain Orthopaedic Clinic are admitted as Stipulated Exhibit #4.
10. Plaintiff's medical records from Dr. Mark E. Brenner of the Pinehurst Surgical Clinic are admitted as Stipulated Exhibit #5.
11. A one-page statement from the Human Resource Director of defendant-employer concerning plaintiff's earnings is admitted as Stipulated Exhibit #6.
12. Plaintiff's employment records from defendant-employer are admitted as Stipulated Exhibit #7.
13. Immediately following the hearing, it was stipulated by the parties that plaintiff had been convicted of four (4) counts of Employment Security Fraud and received unsupervised probation.
RULING ON EVIDENTIARY MATTERS
The objection contained within the deposition of Dr. Mark E. Brenner is ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
***************
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
FINDINGS OF FACT
1. On 19 January 1995, plaintiff was a twenty-six year-old male with a high school diploma employed by defendant-employer as a chicken deboner. Plaintiff worked the second shift and began work with defendant-employer on 9 December 1994.
2. At the time of plaintiff's hiring, defendant-employer had a policy where an employee was on probation for the first sixty (60) days of employment. During this sixty (60) day period, an employee could be dismissed if he received two written disciplinary warnings.
3. On 19 January 1995 plaintiff was required by his supervisor, Yvonne Hairston, to assist the floor personnel in cleaning up bones and placing them in a 30-33 gallon trash barrel, which was approximately two and a half to three feet tall. As part of clean-up, plaintiff was required to lift the full trash barrel and place it on a dolly. While plaintiff was lifting this full barrel and while assisted by another employee, Robert Crowder, plaintiff felt a snap in the center of his lower back. At the time, plaintiff did not feel any pain and did not mention the snap to his co-worker. The lifting incident during which plaintiff felt a snap in his back occurred at approximately ten o'clock p.m.
4. Plaintiff finished working his shift on 19 January 1995 and did not experience any pain, but he did not have to do any additional lifting because the remaining trash barrels had wheels on them.
5. On Friday, 20 January 1995, plaintiff reported to work as usual and performed his regular deboning duties, without heavy lifting.
6. On Saturday, 21 January 1995, the plaintiff went to visit his barber. Following plaintiff's haircut, plaintiff attempted to rise out of the barber's chair when he experienced paralyzing pain in his lower back, which was sharp in nature and proceeded down his left leg. Plaintiff's pain was so severe in nature that his wife had to pick him up from the barber's shop.
7. Plaintiff immediately called defendant-employer but reached the message line. Plaintiff was in excruciating pain and in need of immediate treatment so he went to Highsmith Rainey Hospital Emergency Room where he reported what had occurred. The emergency room doctor prescribed Naprosyn and instructed plaintiff to report to the plant nurse on Tuesday, 24 January 1995.
8. Plaintiff reported to work on Monday, 23 January 1995 and immediately reported his back injury to his supervisor, Ms. Hairston. Plaintiff also explained he tried to contact Perdue on Saturday, 21 January 1995. Plaintiff accompanied Ms. Hairston to the office, and they completed an accident-injury report. Plaintiff was only able to work three or four hours that Monday due to his injured back.
9. Plaintiff did not see the defendant-employer plant's nurse on Monday because the plant nurse was only at the facility on Tuesdays and Thursdays.
10. On 23 January 1995 after leaving work, plaintiff reported to Cape Fear Valley Medical Center's emergency department. Plaintiff was diagnosed with lumbar strain and placed on work restrictions of lifting no more than ten pounds for one week and told to follow-up with occupational Health Services.
11. Plaintiff was examined by the plant nurse on 24 January 1995 when plaintiff presented his work restrictions.
12. The plant nurse called plaintiff at home on 26 January 1995 around one or two o'clock p.m. and told him he had an appointment that afternoon with Dr. Fax in Lumberton. Plaintiff told the nurse at that time he could not get transportation all the way from Fayetteville to Lumberton on such short notice. The nurse informed plaintiff if he could get to the plant that afternoon they would try to get him to Lumberton.
13. Plaintiff could not make the appointment on 26 January 1995 with Dr. Fax due to transportation problems; however, plaintiff saw Dr. Fax first thing the morning of 27 January 1995.
14. Dr. Fax gave plaintiff medication and placed him on light duty of lifting no more than ten pounds, no bending and gave plaintiff a prescription for physical therapy three times a week for two weeks. Dr. Fax additionally sent the defendant-employer a copy of the evaluation with his impression that plaintiff had injured his back on 19 January 1995 at work.
15. On 27 January 1995, plaintiff reported back to defendant-employer and met with his supervisors and the Director of Human Resources. During that meeting, defendant-employer gave plaintiff two separate disciplinary warnings. The first was given to plaintiff for not reporting his alleged injury to his supervisor when it occurred and failing to see a company authorized physician; the second warning was issued for failing to keep the 26 January 1995 appointment with Dr. Fax and not reporting it to his supervisor until later.
16. Additionally, on 27 January 1995, the defendant-employer extended plaintiff's probationary period for twenty-one (21) days since Dr. Fax placed plaintiff on light duty for ten to fourteen days and he was unable to work on 24 January 1995.
17. Plaintiff was given modified job duties on 27 January 1995 in keeping with Dr. Fax's restrictions. Plaintiff worked light duty until 27 February 1995 and experienced back pain while performing these duties. Plaintiff expressed to defendant-employer during this time that he was still having back pain.
18. On 27 February 1995, plaintiff was terminated from his position due to unsatisfactory job performance.
19. Plaintiff's job performance declined from 23 January 1995 until his dismissal 27 February 1995 due to the pain plaintiff experienced as a result of his back injury.
20. Plaintiff requested additional medical treatment and pain medication from defendant-employer after his visit with Dr. Fax both before and after his termination. Defendant-employer refused to provide additional treatment for plaintiff.
21. Defendant-employer failed to file an Industrial Commission Form 19 concerning plaintiff's accident.
22. Plaintiff was unable to work from 28 February 1995 until he secured employment with Reed-Lallier Chevrolet on 1 April 1995 earning the same or greater wages than he had earned during his employment with defendant-employer.
23. Following plaintiff's termination from defendant-employer and their continued refusal to provide medical treatment, plaintiff sought treatment himself from First Fayetteville Orthopaedic and later from Dr. Mark E. Brenner of Pinehurst Surgical Clinic.
24. An MRI scan performed 13 February 1996 revealed plaintiff suffered from a herniated disc at L4-5 with degenerative disc and degenerative facet joint changes.
25. Plaintiff's back injury and herniated disc were either caused or significantly aggravated by his work-related accident on 19 January 1995.
26. As a result of plaintiff's injury by accident arising out of and in the course of his employment on 19 January 1995, plaintiff suffers from a five percent (5%) permanent partial disability to his back. Plaintiff reached maximum medical improvement by 26 October 1996.
27. Even though plaintiff completed an accident-injury report and the defendant-employer sent plaintiff for an evaluation from Dr. Fax who indicated that plaintiff's back injury was work-related, the defendant-employer failed to accept or deny plaintiff's claim, in writing, within ninety (90) days of knowledge of the accident.
28. Plaintiff filed his Industrial Commission Form 18 with the Industrial Commission on 16 June 1995. Plaintiff's first written hint from the defendant-employer that they may deny his claim was a 24 October 1995 letter from defense counsel giving notice of representation.
29. The defendant-employer's dismissal of plaintiff was unjustified and an attempt by the defendant-employer to circumvent any rights plaintiff may have under the North Carolina Workers' Compensation Act.
30. It was not reasonable for the defendant-employer to defend this claim. Not only did the defendant-employer violate provisions of N.C. Gen. Stat. § 97-18, but Dr. Fax, who was the physician they sent plaintiff to for evaluation, supported plaintiff's claim of an injury by accident at work.
*************
The foregoing stipulations and findings of fact engender the following additional:
CONCLUSIONS OF LAW
1. On 19 January 1995 plaintiff sustained an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. §97-2(6).
2. As a result of his compensable injury on 19 January 1995, plaintiff is entitled to temporary total disability from 27 February 1995 through 1 April 1995 at his compensation rate of $146.67 per week. N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury on 19 January 1995, plaintiff is entitled to permanent partial disability compensation for fifteen weeks at a rate of $146.67 per week for the five percent (5%) permanent partial impairment to his back. N.C. Gen. Stat. § 97-31(23).
4. Plaintiff is entitled to have the defendant-employer provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
5. As a result of defendant-employer's unreasonable defense of this claim, the plaintiff is entitled to have the defendant-employer pay him reasonable attorney's fees. N.C. Gen. Stat. § 97-88.1.
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. The defendant-employer shall pay to plaintiff temporary total disability at a compensation rate of $146.67 per week from 27 February 1995 through 1 April 1995. Said amount shall be payable in a lump sum.
2. The defendant-employer shall pay to plaintiff permanent partial disability at a compensation rate of $146.67 per week for fifteen weeks as a result of plaintiff's five percent (5%) permanent partial disability to his back.
3. The defendant-employer shall pay all medical expenses incurred by plaintiff as a result of his compensable injury 19 January 1995 when bills for the same shall have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedure.
4. A reasonable attorney's fee of $750.00 shall be paid directly by defendant-employer to plaintiff's counsel and shall not be deducted from the award to plaintiff herein.
ORDER
This appeal was brought before the Full Commission by the defendant-insurer. The Full Commission has affirmed the decision of the Deputy Commissioner to continue benefits to the plaintiff. N.C. Gen. Stat. § 97-88 allows the Industrial Commission the discretion to award costs to the plaintiff for defending the defendant-insurer's appeal.
Therefore, it is ORDERED, that the defendant-employer shall pay to plaintiff's attorney $1,000 as part of plaintiff's cost of defending this appeal to the Full Commission.
The defendant-employer shall bear the costs of this action.
It is FURTHER ORDERED that pursuant to N.C. Gen. Stat. §97-92(3), the defendant-employer shall pay a fine of $25.00 to the Industrial Commission for failure to file the Form 19, as required by law.
 ______________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
S/ ______________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
BSB/jth